IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

GREGORY L. STIENS,

       Plaintiff,

v.

KILOLO KIJAKAZI
Acting Commissioner of Social Security,

       Defendant.

No. 22-06125-NKL-SSA

**ORDER**

    Plaintiff Gregory L. Stiens seeks review of the denial by the Acting Commissioner of his claim for a period of disability and disability insurance benefits and Supplemental Security Income benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and 42 U.S.C. § 1382, *et seq.* For the reasons set forth below, the Court reverses the ALJ's decision and remands the case to the Commissioner for the award of benefits.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

    Stiens, born February 10, 1957, is 66 years old. Tr. 219. For more than seventeen years, until March 8, 2017, he worked for the Missouri Department of Agriculture as an "Inspection and Certification of Commercial Weighing and Measuring Devices" Specialist. Tr. 375. In that role, he was responsible for inspecting scales once or twice a year in numerous businesses in a territory that included Kansas City, Independence, Raytown, Grandview, and Lee's Summit. Tr. 37, 45, 96. For example, he would check the scales at cash registers and the deli in grocery stores as well as larger scales, such as at UPS, FedEx or the airport. Tr. 37-38, 43, 66. For lighter scales, Stiens would carry a 30-pound kit containing multiple certified weights, which he used to confirm that each scale in a business was accurate. Tr. 38, 66. For heavier scales, Stiens would have to carry

1

heavier certified weights, including 25- and 50-pound weights, and he would sometimes have to lift two 50-pound weights at a time. Tr. 38, 66. Stiens sometimes had to lift the weights over his head to place them on the scales. *Id*. Stiens also would have to check the dates on milk and eggs carried in stores, perform some price verification to ensure that the price shown on the shelf would properly appear at the register for items sold by weight, such as meat, and check packages to ensure that the weight shown on the label was accurate. Tr. 38, 96. Stiens worked ten hours a day: he spent approximately two hours a day in his vehicle driving between locations, an average of 60 to 100 miles a day, and the remainder on his feet, walking or standing. Tr. 45, 95-96.

On March 8, 2017, at age 60, Stiens was terminated from his position—an action he attributed to his inability to lift weights and get around to businesses as well as an inability to complete paperwork in a timely fashion, which he attributed to neck problems. Tr. 39, 64. Despite his termination, Stiens subsequently was able to secure early retirement from that job. *Id.*

In December 2018, Stiens filed an application for a period of disability and disability insurance benefits, alleging an onset date of March 8, 2017. Tr. 10. Stiens' claim was denied both initially and upon reconsideration. *Id.*

At the first ALJ hearing, vocational expert ("VE") Karen Terrill testified in response to questions from the ALJ that Stiens' past work is classified "as a weight and measures inspector." However, while the Dictionary of Occupational Titles ("DOT") classifies that position as "light," according to the VE, Stiens' "performance of it was at a heavy level, and," more significantly, "every person [the VE had] ever known who's done this job has been at a heavy level." Tr. 81. The ALJ asked her to confirm this testimony:

> Q Did you say every person you've known has done it at the heavy level or above?
>
> A Heavy, heavy or at least at a heavy level.

*Id*. The ALJ then presented the VE with a hypothetical question:

> Q Okay. I'd like you to assume a hypothetical individual of the claimant's age, education, and work experience who can perform work at the light exertional level as defined in the regulations including the ability to lift and carry 20 pounds occasionally and ten pounds frequently. The individual could sit six hours and stand or walk six hours in an eight hour work day. The individual could frequently climb, stoop, kneel, and crouch, and occasionally crawl. Could this hypothetical individual perform the claimant's past work?
>
> A Hypothetical individual would be able to perform that work as defined by the DOT but not as he performed it or as I have seen it generally performed.
>
> Q And are there transferable skills from this position to other jobs that would meet the hypothetical?
>
> A No, there is not. It's a very unique position.
>
> Q And is your testimony consistent with the Dictionary of Occupational Titles?
>
> A It is.

Tr. 81-82.

Despite this testimony, and despite concluding that Stiens had the RFC "to perform light work" except that he can lift and carry 20 pounds occasionally and 10 pounds frequently (Tr. 106), the ALJ denied Stiens' claim on August 4, 2020, finding that he was "capable of performing past relevant work as a weight and measures inspector," which "does not require the performance of work-related activities precluded by the claimant's residual functional capacity." Tr. 106 (citation omitted).

The Appeals Council vacated the ALJ's decision and remanded because the ALJ had failed to resolve the conflict between the VE's testimony and the DOT. Tr. 117-18. The Appeals Council instructed the ALJ, in relevant part, as follows:

> If warranted, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the records as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of such appropriate jobs

and to state the incidence of such jobs in the national economy. Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations.

Tr. 118 (citations omitted).

After the Appeals Council remanded the case, the ALJ scheduled another hearing. In that second hearing, the ALJ solicited testimony from a different VE, Jennifer LaRue. The second VE, much like the first VE, classified Stiens' past work as "Weight and measures inspector, DOT 168.267-062, that is light and still SVP of 6, performed at a heavy physical demand level." Tr. 49. The ALJ then questioned the second VE regarding the first VE's testimony:

> Q All right. So when we took testimony at the last hearing regarding this position the vocational expert at that time indicated she was not aware of -- she indicated that every person she had known to perform this job had performed it at, at least the heavy level. Would you agree with that or have you observed this job to be performed at the light as classified in the DOT?
>
> A I can't speak that I've actually placed or worked with someone in this exact position to be able to offer that. But I guess it depends on the weight of the –
>
> ATTY: I would object to any further information. She indicated she couldn't answer the question because that was out of her experience so --
>
> ALJ: All right.
>
> ATTY: --I would –
>
> ALJ: Ms. LaRue –
>
> ATTY: -- object to further elucidation in that regard.
>
> BY ADMINISTRATIVE LAW JUDGE:
>
> Q -- Ms. LaRue, could you finish what you were saying?
>
> A Yes. I was saying just -- it depends on the weight of the scales how it differed between job to job what would be the requirement for lifting for this type of position.
>
> Q Okay. All right. Are you aware of any transferable skills of this job as defined in the DOT?

> A To a sedentary physical demand level?
>
> Q Yes.
>
> A Let me look, I had that pulled up. Let's see, there's an investigator position at the sedentary level. Like I said that is sedentary, however it's in a different industry.
>
> Q His age is 64, so.
>
> A So that would not transfer.

Tr. 49-50.

The ALJ then presented the second VE with a hypothetical that she was instructed to answer based only on the DOT:

> Q Okay. I want you to just focus on what is in the <u>Dictionary of Occupational Titles</u>, and hypothetical is the individual can perform light exertional work as defined in the regulations including the ability to lift and carry 20 pounds occasionally and ten pounds frequently. The individual could sit six hours and stand or walk six hours in an eight hour work day. The individual could frequently climb, stoop, kneel, and crouch, and occasionally crawl. Would this hypothetical fit how it's described in the <u>Dictionary of Occupational Titles</u>?
>
> A One moment, the exertions pulled up. Yes, that would be within that exertion.
>
> Q And you've not relied on anything outside the <u>Dictionary of Occupational Titles</u> to respond to that question?
>
> A No. This is the definition of the strength level and the exertion per the –
>
> Q All right.
>
> A -- DOT.

Tr. 50-51.

Upon questioning by Stiens' attorney, the second VE again stated that she was not aware of any positions actually performed in a weight and measure inspector's position at the light level. Tr. 51. The second VE further acknowledged that the DOT "in terms of that particular finding" is 50 years old and that there has been no change in the Weight and Measures Inspector description in that time. Tr. 52. The second VE agreed in that context that the DOT is "outdated." *Id.*

Nonetheless, the ALJ again denied Stiens' application. Tr. 7. At step one of the five-step sequential evaluation process required by 20 C.F.R. § 404.1520, the ALJ found that Stiens did not engage in substantial gainful activity during the relevant period. Tr. 13. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, degenerative joint disease of the right knee, and calcium pyrophosphate deposition disease. *Id*. However, the ALJ found that Plaintiff's impairments did not meet or medically equal the criteria of any listing described in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. The ALJ then determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except he could lift and carry 20 pounds occasionally and 10 pounds frequently; sit 6 hours and stand or walk 6 hours in an 8-hour workday; frequently climb, stoop, kneel, and crouch; and occasionally crawl. Tr. 14. The ALJ then found that Stiens was capable of performing past relevant work as a weights and measures inspector as that job is generally performed, and, therefore, that Stiens was not disabled from March 8, 2017 through October 29, 2021. Tr. 18-19.

The Appeals Council declined to review the ALJ's second decision. Tr. 1. Therefore, the ALJ's second decision, dated October 29, 2021, is the final decision of the Commissioner that is subject to review on this appeal.

## II. STANDARD

The Court must affirm the Commissioner's denial of social security benefits if "there was no legal error" and "the findings of fact are supported by substantial evidence on the record as a whole." *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016). "Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion." *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). The Court must consider both "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id*.

(quotation marks and citation omitted).  However, "as long as substantial evidence in the record supports the Commissioner's decision, [the Court] may not reverse it because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently."  *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015) (quotation marks and citation omitted).

The Court must "defer heavily to the findings and conclusions of the Social Security Administration."  *Michel v. Colvin*, 640 F. App'x 585, 592 (8th Cir. 2016) (quotation marks and citations omitted).  However, the Court "do[es] not defer to the ALJ's legal conclusions."  *Brueggemann v. Barnhart*, 348 F.3d 689, 692 (8th Cir. 2003).  Thus, errors of procedure, use of erroneous legal standards, incorrect applications of the law, and the question of whether the ALJ's decision was based on legal error all are reviewed *de novo*.  *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011) (citations omitted).

### III. DISCUSSION

#### A. Whether Substantial Evidence Supported the ALJ's Decision

Generally, a claimant will be found "not disabled" at Step Four of the five-step disability determination if he maintains the RFC to perform his past relevant work, either as he actually performed it or as it is generally performed in the national economy.  *Social Security Ruling (SSR) 82-61*, 1975-1982 Soc. Sec. Rep. Serv. 836, 1982 WL 31387, at *2; 20 C.F.R. § 404.1560(b); 20 C.F.R. § 416.960(b); *Arriaga v. Astrue,* No. 8:11CV261, 2012 WL 4105091, at *17 (D. Neb. Sept. 18, 2012).  Here, the ALJ concluded that Stiens was capable of performing his past relevant work and therefore was not disabled.

The sole issue presented in this appeal is whether Plaintiff could perform his past relevant work as a weights and measures inspector.  If he was not able to perform his past relevant work,

given his "advanced age" and the lack of transferable skills, he would be entitled to an award of Social Security disability and disability insurance benefits. *See* 20 C.F.R. § 404.1563(e) ("We consider that at advanced age (age 55 or older), age significantly affects a person's ability to adjust to other work."); 20 C.F.R. § Pt. 404, Subpt. P, App. 2, § 202.00(c) ("[F]or individuals of advanced age who can no longer perform vocationally relevant past work and who have a history of unskilled work experience, or who have only skills that are not readily transferable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity, or who have no work experience, the limitations in vocational adaptability represented by functional restriction to light work warrant a finding of disabled."), 202.06; *Hall v. Saul*, No. 19-CV-3019-LTS-KEM, 2020 WL 5229539, at *6 (N.D. Iowa May 27, 2020) ("As Hall notes, given his 'advanced age,' with this RFC, he would be considered disabled under the grids unless he was either able to return to his past relevant work or had gained transferable skills from his past relevant work." (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2 §§ 200.00, 202.00, 202.06, 202.07)), *report and recommendation adopted*, No. C19-3019-LTS, 2020 WL 3121226 (N.D. Iowa June 12, 2020); *Eppes v. Berryhill*, No. 518CV00026BSMJTK, 2018 WL 4145920, at *2 (E.D. Ark. Aug. 30, 2018) ("According to the Medical-Vocational Guidelines, a person of advanced age with a limited education and an RFC for light work with no transferable skills is disabled if unable to return to past relevant work. With the RFC that the ALJ found, Eppes would be disabled under the Medical-Vocational Guidelines." (citing 20 C.F.R. § Pt. 404, Subpt. P, App. 2)).

Defendant argues that because the second VE testified that a hypothetical claimant with Plaintiff's age, education, work history, and RFC could perform Plaintiff's past work as a Weights and Measures Inspector as that job is listed in the DOT (a light work, skilled job), Tr. 49, 51, substantial evidence supports the ALJ's conclusion that Stiens could perform his past relevant

work. This is particularly the case, Defendant argues, because Plaintiff bears the burden of showing that he cannot perform his past relevant work. *See Cruze v. Chater*, 85 F.3d 1320, 1322 (8th Cir. 1996) ("After the claimant has shown that he is precluded from doing past relevant work, at step five of the analysis the burden shifts to the Secretary to demonstrate that the claimant possesses the residual functional capacity to perform jobs that exist in the national economy.").

However, as discussed further below, Defendant's argument ignores (1) the fact that the first VE—the only VE with any personal knowledge on the topic—testified that, despite the DOT's classification of the job as "light," the work in her experience is performed, at a minimum, at a heavy level; (2) the fact that the second VE had no knowledge or information outside of the DOT description on which basis she could refute the first VE's testimony regarding how the weights and measures job is "generally" performed; and (3) the fact that the second VE acknowledged in this context that the DOT is "outdated."

Here, the first VE testified that, while the DOT classifies the position of weight and measures inspector as "light," not only was Stiens' "performance of it . . . at a heavy level," but also, "every person [the VE has] ever known who's done this job has been at a heavy level." Tr. 81. When the ALJ sought clarification on this point, the VE testified that such work, in her experience, was performed at a "heavy or at least at a heavy level." *Id.* What's more, the VE reemphasized this point when the ALJ posed a hypothetical question:

> Q I'd like you to assume a hypothetical individual of the claimant's age, education, and work experience who can perform work at the light exertional level as defined in the regulations including the ability to lift and carry 20 pounds occasionally and ten pounds frequently. The individual could sit six hours and stand or walk six hours in an eight hour work day. The individual could frequently climb, stoop, kneel, and crouch, and occasionally crawl. Could this hypothetical individual perform the claimant's past work?
>
> A Hypothetical individual would be able to perform that work as defined by the DOT but not as he performed it or *as I have seen it generally performed*.

Tr. 82 (emphasis added).

In contrast with the first VE, the VE on whose testimony the ALJ relied acknowledged that she did not have any personal knowledge of how the weights and measures inspector job is performed:

> Q All right. So when we took testimony at the last hearing regarding this position the vocational expert at that time indicated she was not aware of -- she indicated that every person she had known to perform this job had performed it at, at least the heavy level. Would you agree with that or have you observed this job to be performed at the light as classified in the DOT?
>
> A I can't speak that I've actually placed or worked with someone in this exact position to be able to offer that. But I guess it depends on the weight of the –
>
> **ATTY:** I would object to any further information. She indicated she couldn't answer the question because that was out of her experience so – I would object to further elucidation in that regard.
>
> **BY ADMINISTRATIVE LAW JUDGE**:
>
> Q Ms. LaRue, could you finish what you were saying?
>
> A Yes. I was saying just it depends on the weight of the scales how it differed between job to job what would be the requirement for lifting for this type of position.

Tr. 49-50. Naturally, given that the second VE had no personal knowledge on which to rely, both the ALJ's subsequent hypothetical question and the second VE's response were limited to her knowledge of the DOT description of the weights and measures inspector role:

> Q Okay. *I want you to just focus on what is in the Dictionary of Occupational Titles*, and hypothetical is the individual can perform light exertional work as defined in the regulations including the ability to lift and carry 20 pounds occasionally and ten pounds frequently. The individual could sit six hours and stand or walk six hours in an eight hour work day. The individual could frequently climb, stoop, kneel, and crouch, and occasionally crawl. *Would this hypothetical fit how it's described in the Dictionary of Occupational Titles*?
>
> A One moment, the exertions pulled up. Yes, that would be within that exertion.
>
> Q And you've *not relied on anything outside the Dictionary of Occupational Titles to respond to that question?*

A No. This is the definition of the strength level and the exertion *per the . . . DOT.*

Tr. 50-51 (emphasis added).

The second VE had already classified Stiens' past work as "Weight and measures inspector, **DOT 168.267-062**, . . . performed at a heavy physical demand level." Tr. 49. Upon questioning by Stiens' lawyer, the second VE again acknowledged that she was not aware of any positions actually performed in a weight and measure inspector's position at the light level. Tr. 51.[1]

There would have been nothing improper about the ALJ's relying exclusively on the second VE's testimony, and the second VE's relying exclusively on the DOT, had it not been inconsistent with the testimony of the first VE, who not only was familiar with the DOT description, but also had through her personal experience formed an opinion about how the job was "generally" performed that contradicted the DOT.

Defendant argues that the ALJ was not required to adduce vocational expert testimony. It is true that "[v]ocational expert testimony is not required at step four where the claimant retains

---

[1] The DOT's description of a "Weights and Measures" inspector does not reference weights or weighing at all, except in the job title—which may account for its classification of the job as "light." *See* DOT 168.267-062 ("Investigates regulated activities to assure compliance with federal, state, or municipal laws: Locates and interviews plaintiffs, witnesses, or representatives of business or government to gather facts relating to alleged violation. Observes conditions to verify facts indicating violation of law relating to such activities as revenue collection, employment practices, or fraudulent benefit claims. Examines business, personal, or public records and documents to establish facts and authenticity of data. Investigates character of applicant for special license or permit. Investigates suspected misuses of license or permit. Prepares correspondence and reports of investigations for use by administrative or legal authorities. Testifies in court or at administrative proceedings concerning findings of investigation. May serve legal papers. May be required to meet licensing or certification standards established by regulatory agency concerned. May be designated according to function or agency where employed as Inspector, Weights And Measures (government ser.); Investigator, Internal Revenue (government ser.); Investigator, Welfare (government ser.); Postal Inspector (government ser.); Investigator, Claims (government ser.)."). It is difficult to imagine a position that by its very name suggests inspection of "weights" that would not require lifting weights.

the burden of proving she cannot perform her prior work." *Lewis v. Barnhart*, 353 F.3d 642, 648 (8th Cir. 2003). But there is no dispute that "[t]he ALJ is permitted to rely on a vocational expert in order to determine whether a claimant can perform his past relevant work, either as he performed it or as it is performed in the national econom[y]." *Girshner v. Berryhill*, No. 4:16-CV-03451-NKL, 2017 WL 2859930, at *8 (W.D.Mo. July 5, 2017). Where, as here, the ALJ has sought VE testimony, the ALJ is not permitted to cherry-pick and disregard portions of it without any stated reason, as the ALJ did with the first VE's testimony. *See, e.g., True v. Colvin*, No. C15-3089, 2015 WL 6775924, at **9-10 (N.D. Iowa Nov. 6, 2015) (reversing and remanding for further proceedings where ALJ "cherry-picked the opinions of one vocational counselor and ignored the opinions of two other vocational counselors"). Nor is the ALJ permitted to disregard obvious holes in the testimony, as the ALJ did in ignoring the fact that the second VE had no knowledge of the position outside of what was printed in the DOT. *See, e.g., Ellison v. Sullivan*, 921 F.2d 816, 822 (8th Cir. 1990) ("We have previously found that . . . an ALJ's reliance on a vocational expert's testimony to determine that no disability existed was improper where the ALJ ignored a critical assumption underlying the expert's testimony." (citation omitted)).

The ALJ was obligated to: (1) "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the *Dictionary of Occupational Titles* (DOT)," and "[e]xplain in the determination or decision how any conflict that has been identified was resolved." SSR 00-4p; *see also Quinn v. Berryhill*, No. 4:17-CV-04013-KES, 2018 WL 1401807, at *11 (D.S.D. Mar. 20, 2018) ("Vocation evidence should be consistent with the Dictionary of Occupational Titles. An ALJ must ask about any possible conflict between the VE's evidence and information provided in the DOT about a job's requirements." (citing SSR 00–4p, 2000 WL 1898704, at *2, *4 (Dec. 4, 2000)). But the ALJ did not provide a

12

Case 5:22-cv-06125-NKL    Document 15    Filed 07/27/23    Page 12 of 14

reasonable explanation for the conflict, nor did she resolve it. The ALJ made what appears to be a gesture towards doing so when she stated, "It is understood that some individual jobs may require somewhat more or less exertion than the DOT description." Tr. 18. But the fact that, as a general matter, some jobs may require more or less exertion than the DOT states is not evidence that the DOT classification of the weights and measures inspector position as "light" is accurate. In the face of the first VE's testimony suggesting that the DOT classification of the position was not accurate, the second VE's disclaiming any personal knowledge of weights and measures inspectors performing the job at the light level, the fact that both VEs acknowledged that Stiens performed the job at a heavy level, and the second VE's acknowledging that the DOT is "outdated" in this regard, the ALJ's conclusion that Stiens was capable of performing the job of a weights and measures inspector, as it is generally performed, lacked substantial support in the record.

Defendant argues that Stiens' own testimony concerning his job duties is consistent with the DOT's entry for the position of weights and measures inspector. Defendant appears to imply that Stiens' work "checking the small scales in stores, mostly grocery stores" was not arduous, but that was not the case. Stiens carried a 30-pound kit to check just the lighter scales. For heavier scales, he would have to carry heavier weights, including weights that were 25 and 50 pounds individually, even two 50-pound weights at once, and he sometimes had to lift the weights overhead. Tr. 38, 66. Stiens testified that he was terminated partially because he was having trouble lifting the weights, as his job required. Tr. 39. Thus, Stiens' own account of his job duties, contrary to Defendant's contention, does not support the ALJ's findings. In addition, of course, both VEs categorized Stiens' performance of his past work as at a "heavy" level. Tr. 81, 49.

In short, the ALJ's conclusion that Stiens was able to perform his past relevant work was not supported by substantial evidence.

13

Case 5:22-cv-06125-NKL   Document 15   Filed 07/27/23   Page 13 of 14

### B. **Whether the Court Should Direct the Commissioner to Award Benefits**

Both the first and second VEs testified that there were no transferable skills from the weights and measures inspector position that would allow the hypothetical individual of Stiens' age, education, work experience, and RFC to perform other jobs. Tr. 81-82 (Q And are there transferable skills from this position to other jobs that would meet the hypothetical? A No, there is not. It's a very unique position.); Tr. 50-51 (testifying that, in light of Stiens' age, there were no transferable skills).

Because the only reliable evidence in the record shows that Stiens cannot perform his past relevant work as a weights and measures inspector, and because both VEs opined that Stiens would have no transferrable skills, the Court concludes that an award of disability and disability insurance benefits to Stiens is warranted. *See Pate-Fires v. Astrue*, 564 F.3d 935, 947 (8th Cir. 2009) ("Reversal and remand for an immediate award of benefits is the appropriate remedy where the record overwhelmingly supports a finding of disability."); *Eppes*, 2018 WL 4145920, at *2 (reversing and remanding for immediate award of benefits where claimant was of advanced age at the onset date, had no transferable skills, and was unable to return to past relevant work).

### IV. **CONCLUSION**

For the reasons discussed above, the Court reverses the ALJ's decision and remands the case to the Commissioner for the award of disability and disability insurance benefits.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: July 27, 2023
Jefferson City, Missouri